V. James DeSimone (SBN: 119668)
vjdesimone@gmail.com
Carmen D. Sabater (SBN: 303546)
cds820@gmail.com
Jenica P. Leonard (SBN: 245366) Of-Counsel
jleonard@bohmlaw.com
**V. JAMES DESIMONE LAW**
13160 Mindanao Way Suite 280
Marina Del Rey, California 90292
Telephone: (310) 693-5561
Email: VJD000083@bohmlaw.com

Attorneys for Plaintiff,
NICHOLAS STERN

# UNTIED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS STERN, | Case No.: 2:21-CV-03760-CBM(ASx) |
| Plaintiff, | *Assigned to Honorable Consuelo B. Marshall, U.S. District Judge* |
| v. | |
| CITY OF LOS ANGELES, a municipal entity; CHIEF MICHEL MOORE; CHRISTIAN ARRUE; NICHOLAS CHACON; DAVID MARTIN; SHANNON PAULSON; and DOES 3-100 inclusive, | **PRE-TRIAL CONFERENCE ORDER** |
| | **Pretrial** |
| | Date: September 20, 2023 |
| | Time: 10:00 a.m. |
| | Courtroom: 8D |
| Defendants. | |
| | **Trial** |
| | Date: October 24, 2023 |
| | Time: 10:00 a.m. |
| | Courtroom: 8D |
| | Action Filed: June 1, 2021 |

1

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)
V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

**1.     THE PARTIES**

*Plaintiff:* Nicholas Stern ("Mr. STERN").

*Defendants*: The City of Los Angeles, and Officer David Martin.

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are:

1. Dkt. No. 67: Case No. 2:21-CV-03760-CBM(ASx); Plaintiff's Second Amended Complaint for Damages;

2. Dkt. No. 69: Case No. 2:21-CV-03760-CBM(ASx); Defendants City of Los Angeles, and David Martin's Answer to Plaintiffs' Second Amended Complaint;

3. Plaintiff's Memorandum of Contentions of Fact and Law.

4. Defendants' Memorandum of Contentions of Fact and Law

5. Dkt. No 83: Order Dismissing Certain Parties and Claims

**2.     JURISDICTION AND VENUE**

The Parties do not dispute the Court's jurisdiction based upon 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights jurisdiction), and 1391(b) (venue).

**3.     LENGTH OF TRIAL**

Plaintiff's trial estimate is eight days (8) days, including jury selection, opening statements, and closing arguments.  Defendants' trial estimate is four (4) days, including jury selection, opening statements and closing arguments. Defendants note that if eight days is allotted for trial, Defendants' counsel has a conflict with another trial and will request this trial be moved to a later date.

**4.     FORM OF TRIAL**

a.     The trial is to be a jury trial.

b.     At least seven (7) days prior to the trial date the parties shall file and serve by e-mail, fax, or personal delivery: (a) proposed jury instructions as required

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

by L.R. 51-1 and (b) any special questions requested to be asked on *voir dire*. The parties request that the Attorneys be permitted to conduct *voir dire*.

**5.     ADMITTED FACTS**

The Parties agree that the following facts are admitted and require no proof:

a.     Officer Martin, was acting under color of law and in the course and scope of his employment.

b.     The incident occurred on May 30, 2020, in  Los Angeles, California.

**6.     STIPULATED FACTS**

None.

**7.     CLAIMS AND DEFENSES**

**A.     Plaintiff's Claims:**

***Claim No. 1: Plaintiff Nicholas Stern has claims for First Amendment Rights violation (42 U.S.C. § 1983, 1ˢᵗ Amendment) against all Defendants.***

**Elements Required to Establish Plaintiff's Claim No. 1**

In order to prevail on his Freedom of Speech and Association claims against all Defendants, Plaintiff must establish the following elements by a preponderance of the evidence:

(1)     Plaintiff was engaged in constitutionally protected activity;

(2)     The actions of City of Los Angeles.  through the conduct of Officer Martin, against Plaintiff would chill a person of ordinary firmness from continuing to engage in the protective activity; and

(3)     Plaintiff's protected activity was a substantial or motivating factor in City of Los Angeles, through the conduct of Officer Martin. Public demonstrations and protests are constitutionally protected activity. "Ordinary firmness" is an objective standard that will not allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity. A substantial or motivating factor is a significant factor, though not necessarily the only factor.

1      If the plaintiff establishes each of the foregoing elements, the burden shifts

2  to the defendant to demonstrate that the defendant would have taken the action(s)

3  in question, even in the absence of any motive to retaliate against the plaintiff. If

4  the jury finds that the defendants are able to demonstrate this, the jury must find for

5  the defendants. If the jury finds that the defendants are not able to demonstrate this,

6  the jury must find for the plaintiff.

7  (Ninth Circuit Model Jury Instruction § 9.11); *Index Newspapers LLC v. United*

8  *States Marshals Serv.*, 977 F.3d 817, 830 (9th Cir. 2020); *Mendocino Envtl. Ctr. v.*

9  *Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

10      **Plaintiff's Key Evidence:**

11      On or around May 30, 2020, during the protests related to the murder of

12  George Floyd and other deaths of other BIPOC (Black, Indigenous, and People of

13  Color) people at the hands of police officers, Mr. STERN documented the protests

14  as a freelance journalist/photographer near 3rd Street and West of Fairfax Avenue

15  in the City of Los Angeles. Specifically, Mr. STERN arrived at Pan Pacific Park

16  around noon on May 30, 2020 to document this watershed moment in civil rights

17  history.

18      Throughout his interactions with the Los Angeles Police Department

19  ("LAPD") Officers, Mr. STERN was calm, compliant, wore his identifiable press

20  badge, and carried his hefty camera equipment. While documenting the protests,

21  Mr. STERN maintained journalistic neutrality, refrained from participating in the

22  protest activities, and did not engage with LAPD in any negative way. Mr. STERN

23  was violently assaulted on three different occasions, despite this professionalism.

24      The first incident took place when the marching protesters from Pan Pacific

25  Park were stopped in front of a LAPD "skirmish line" on Fairfax Avenue near 3rd

26  street at approximately 2:00 PM. Mr. STERN, at the front of the group of protestors,

27  participated in his First Amendment protected speech and press activities by

28  documenting the demonstration, including LAPD's violent response to peaceful

**PRE-TRIAL CONFERENCE ORDER**                V. James DeSimone, Esq.
*Stern v. City of Los Angeles, et al.*                  Carmen D. Sabater, Esq.
Case No.: 2:21-CV-03760-CBM(ASx)           Jenica P. Leonard, Esq.

protesters.

At around 2:34 PM, and unbeknownst to the protest group, Commander Shannon Paulson approved the use of less-lethal munitions. LAPD Officer Arrue, Officer Chacon, and other unidentified LAPD officers repeatedly and aggressively struck Mr. STERN forcefully in his ribs with their batons. LAPD officers did not give any dispersal orders, nor had they declared the gathering unlawful prior to assaulting Mr. STERN and other members of the public.

The City of Los Angeles was so ill-prepared for this protest no equipment was available to lawfully communicate dispersal orders to the crowd, Officer's were allowed to choose less lethal rifles and to indiscriminately shoot at the crowd, the Officers were not properly trained in crowd control or the first amendment rights of speech and press.

Next, at or around 3:00 PM, to avoid being repeatedly battered by batons by LAPD Officers, Mr. STERN moved away from the group of protestors using his press credentials to access the sidewalk behind the skirmish line to seek safety from LAPD. Mr. STERN stood alone. The only people near Mr. STERN were LAPD officers. At first Mr. STERN believed he had reached a point of safety on the sidewalk. When he next looked through his camera's viewfinder to continue to document the protest, he saw LAPD Officer Martin who was armed with a less-lethal weapon and munitions. Officer Martin leveled the shotgun at Mr. STERN. With his camera in his right hand, Mr. STERN used his left hand to present his press credentials to Officer Martin, but Martin did not respond. Instead, and without warning, Martin fired his less-lethal shotgun directly at Mr. STERN with intent to cause him great bodily harm. A rubber bullet struck Mr. STERN in the upper right thigh. Mr. STERN photographed the precise moment MARTIN fired the less-lethal munition at him. The impact of the munition caused Mr. STERN to drop his camera, caused him to limp for days after the event, and resulted in a large bruise on his thigh.  Martin's targeting of a journalist who posed no threat is in direct violation

PRE-TRIAL CONFERENCE ORDER
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

1  of LAPD policies pertaining to less lethal weapons and crowd control.

2      Moments later, in severe pain, Mr. STERN, compelled by his civic duty to

3  document the protests, continued to photograph the LAPD and protesters. At

4  approximately 3:10-3:20 PM, Mr. STERN was struck by a second rubber bullet.

5  This round grazed his left knee.

6      Finally, an hour after the last assault, between 4:10 and 4:20 PM, Mr. STERN

7  and another journalist were walking away from the 3rd Street and Fairfax Avenue

8  area. Mr. STERN and the other journalist watched an LAPD officer shove a fellow

9  journalist to the ground without provocation. In fear for his safety and of ongoing

10  clashes with the LAPD, Mr. STERN left the protest and returned home and tended

11  his wounds.

12      On June 30, 2020, the Los Angeles City Council ("City Council") approved

13  a motion directing the LAPD to prepare an After-Action Report reviewing the

14  LAPD's actions during the May/June 2020 protests. The City Council requested

15  that Gerald Chaleff, the author of LAPD's review of the 2007 May Day protests,

16  lead the review. The LAPD ultimately decided to conduct its own after-action

17  review.

18      In July 2020, the Los Angeles Board of Police Commissioners asked the

19  National Police Foundation ("NPF") to conduct an after-action review assessment,

20  and analysis of the LAPD's actions during the May/June 2020 protests. The Los

21  Angeles Police Foundation funded the National Police Foundation's after-action

22  review.

23      Mr. Chaleff and his review team prepared "An Independent Examination of

24  the Los Angeles Police Department 2020 Protest Response," ("Chaleff's After-

25  Action Report"), which was transmitted to the City Council on March 10, 2021.

26  LAPD's after-action report, "SAFE LA Civil Unrest 2020 After Action Report,"

27  ("LAPD Internal After-Action Report") was released on April 9, 2021.

28  ///

The National Police Foundation's Report, "A Crisis of Trust: A National Police Foundation Report to the Los Angeles Board of Police Commissioners on the Los Angeles Police Department Response to First Amendment Assemblies and Protests Occurring May 27-June 7, 2020" ("NPF After-Action Report) was released on April 9, 2021.

According to Independent Counsel Gerard Chaleff, Defendant City of Los Angeles has a history of legal settlements and agreements that it entered into after lawsuits were filed in connection with police conduct at large events: in 2000 (Democratic National Convention); 2007 (MacArthur Park incident); 2011 (Occupy LA); and 2014 (Ferguson demonstrations). In each settlement, there were mandates that the LAPD correct policy, procedures, and training regarding various components of the management of protests and demonstrations. The LAPD did not maintain some of the requirements from these prior settlement agreements, which in turn caused problems for the LAPD in 2020. Crowd control, mobile field force, mass arrest procedures, and less lethal training were all insufficient.

Mr. Chaleff also documented the following deficiencies by the LAPD throughout the protests:

(1)     When the LAPD did begin to set up a command post, the assigned personnel did not have the experience or training to execute what needed to be done to successfully run a command post.

(2)     The LAPD did not adequately prepare the LAPD command staff for events such as those faced in May/June 2020.

(3)     The LAPD did not, or was not able to, isolate and arrest those criminal elements who were throwing objects, creating violence, or looting due in part to the use of antiquated tactics and lack of training on public order policing.

(4)     The LAPD failed to maintain requirements from prior settlement agreements related to protest response, which in turned caused problems for the LAPD in 2020, and, in particular, violated the written agreement reached to provide

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

for speech and press rights during protests in the case of *Crespo vs. City of Los Angeles.*

(5)     Preparedness demands that an organization plan, organize, train, exercise, and evaluate performance before any event actually occurs. As such, training and exercising that at one time had been implemented should have been sustained within the LAPD over the years but was not.

(6)     There was a lack of a unified message from City leaders to de-escalate the violence so that peaceful protestors could exercise their First Amendment rights.

(7)     There was a lack of firm executive-level direction to the LAPD command officers to prepare and plan for potential widespread civil unrest and demonstrations which contributed to the problems.

(8)     There was a lack of training to properly prepare command officers for managing large crowds with the possibility of civil unrest and many command officers stated they did not feel confident in handling these incidents.

(9)     The deployment of less lethal munitions was not always done at the direction of a supervisor or officer. In some instances, officers were directed to be in front of a skirmish line and left to deploy less lethal tools with no direction or coordination.

(10)    Annual, hands-on training on public order policing for command staff diminished over time resulting in many command staff in 2020 not being prepared for the civil unrest.

The Chaleff After-Action Report issued numerous recommendations as a result of the LAPD's failures during the May/June 2020 protests. The NPF After-Action Report lists 22 findings, which include:

(1)     LAPD's policies and practices "were inadequate to handle the disparate groups, or to identify leaders amongst the protesters and address the level of violence."

(2)     "Some LAPD personnel had not been provided contemporary training

1   on crowd management, mobile field force, supervision, deescalation, or the use of
2   less-lethal instruments prior to the First Amendment assemblies and demonstrations
3   from May 27 through June 7, 2020. Many of the LAPD training bulletins, courses,
4   and directives related to crowd management and control were outdated."

5   (3)   LAPD "do[es] not have one policy directing response specifically to
6   large scale, fluid, city-wide civil unrest that turns violent or contains violence."

7   (4)   Communication "between the Chief, his command staff, bureau
8   commanders and field supervisors, and line officers" was inconsistent and "created
9   significant challenges regarding:

10          (a) identifying a cogent operating philosophy;

11          (b) determining operations during individual shifts, including when
12          shifts started and ended; and

13          (c) establishing coordination and consistency between shifts." This
14          "impacted every component of the LAPD response" to the protests.

15   The NPF After-Action Report also issued numerous recommendations as a
16   result of the LAPD's failures during the May-June 2020 protests.

17   According to the LAPD, officers deployed 11,305 rounds of "less-lethal
18   munitions" during the May/June protests, comprised of:

19   (1)   4,377 37mm projectile rounds

20   (2)   2,621 40mm projectile rounds

21   (3)   4,307 beanbag shotgun rounds

22   It should be noted that Officer Martin had one of the highest counts of
23   Officers shooting 37 mm projectile rounds.

24   The LAPD's Internal After-Action Report list recommendations in twenty-
25   six areas of improvement. Some of these recommendations highlighted the LAPD's
26   inadequate command and control training and deficiencies regarding
27   communications and unity of command.

28   ///

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

One specific recommendation is: "The Department used a significant amount of less-lethal munitions to protect the City and restore order. The Department should continue to research and seek best practices related to the deployment of less lethal munitions. This should include an examination of the Department's current less lethal capabilities and new available technologies. A clear understanding regarding when to deploy less-lethal and the level of approval necessary should be reiterated and clarified to avoid confusion. When less-lethal is deployed, when available it should be used in conjunction with BWV to capture the activity leading up to the decision to use less-lethal. Officers trained in less-lethal should attend annual weapons manipulation training."

Despite all evidence to contrary, Chief Moore stated that the "vast majority of [LAPD] personnel performed admirably" during the protests in his letter to the Police Commission accompanying the LAPD Internal After-Action Report.

The Office of the Inspector General received 2,850 personnel complaints related to the protests. The SAFE LA Task Force initiated 210 complaint investigations, of which 73 were related to excessive use of force. As of April 9, 2021, 33 of these investigations were reviewed and no allegations of unauthorized use of force were sustained.

In the years preceding the May/June 2020 protests, the City has settled numerous class action lawsuits alleging that LAPD officers used unreasonable and excessive force against peaceful protestors in violation of their First and Fourth Amendment rights. Moore, and the members of his command staff to whom he has delegated responsibility to enact and implement lawful policies on the use of force, public order policing, dispersal orders, and declarations of unlawful assembly, are aware of the ongoing unlawful policies, practices, and customs of the City and the LAPD which resulted in these settlements. They are also aware of the requirements that the settlements imposed on them. But despite these requirements, the unlawful policies, practices, and customs continue under the City and Chief Moore's

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

1    command and caused the harm suffered by Mr. STERN in this case.

2    **Defendants' Key Evidence:**

3    On May 30, 2020, the LAPD was mobilized to manage the civil unrest in the

4    City of Los Angeles.  Defendant Officer David Martin responded to the area of

5    Third Street and West of Fairfax Avenue in the City of Los Angeles where

6    thousands of people flooded the streets.  At approximately 1:00 p.m. protesters took

7    over a Metro bus, surrounding the buss, standing on top of the bus and breaking the

8    windows to the bus.  As such, the assembly was declared unlawful.

9    As officers tried to clear the unlawful assembly and rescue the occupants of

10   the Metro bus, individuals lit multiple police vehicles on fire, and threw rocks,

11   bottles of urine, and other objects at officers.  To assist in clearing out the area and

12   to allow a line of officers to advance towards the Metro bus, Defendant Officer

13   Martin used his less lethal 37 millimeter launcher, a device which shoots multiple

14   small foam rounds at the ground at once, which then skip up and hit the lower

15   portion of a person's body.  One of the small foam rounds hit the ground in front of

16   Plaintiff and then struck him in the leg. Plaintiff suffered no serious injuries and

17   required no medical treatment.  Defendants will present body worn camera video,

18   photographs, and testimony from Officer Martin, Plaintiff and police practices

19   expert Clarence Chapman to support these facts.

20   ***Claim No. 2: Plaintiff Nicholas Stern has a claim for Fourth Amendment***

21   ***Rights violation (42 U.S.C. § 1983, 4th Amendment) against all Defendants.***

22   **Elements Required to Establish Plaintiff's Claim No. 2**

23   In order to prevail on his Excessive Force claims against the City of Los

24   Angeles (through the conduct of its officers), , Officer Martin, , Plaintiff must

25   establish the following elements by a preponderance of the evidence:

26   (1)   Defendant City of Los Angeles (through the conduct of its officers),

27   Officer Martinacted under color of law;

28   (2)   Defendant City of Los Angeles (through the conduct of its officers),

1   Officer Martin, used excessive force against Plaintiff in defending himself and

2   others;

3           (3)     The excessive force caused injury, damage, or harm to Mr. STERN.

4           A seizure occurs when force is applied intentionally to an individual or to a

5   group of which the individual is a part. In general, a seizure of a person is

6   unreasonable under the Fourth Amendment if a police officer uses excessive force

7   in making a lawful arrest and/or in defending himself or others. Therefore, in order

8   to prove an unreasonable seizure in this case, Mr. STERN must prove by a

9   preponderance of the evidence that Defendant Martin used excessive force against

10  Mr. STERN when Defendant Martin battered Mr. STERN and fired less-lethal

11  munitions at him.

12          Under the Fourth Amendment, a police officer may use only such force as is

13  "objectively reasonable" under all of the circumstances. The jury must judge the

14  reasonableness of a particular use of force from the perspective of a reasonable

15  officer on the scene and not with the 20/20 vision of hindsight. Although the facts

16  known to the officers are relevant to this inquiry, an officer's subjective intent or

17  motive is not.

18          In determining whether the officers used excessive force in this case, the jury

19  should consider all of the circumstances known to the officers on the scene,

20  including:

21          (1)     The nature of the crime or other circumstances known to the officer at

22  the time force was applied;

23          (2)     Whether Plaintiff posed an immediate threat to the safety of the officer

24  or to others;

25          (3)     Whether Plaintiff was actively resisting arrest or attempting to evade

26  arrest by flight;

27          (4)     The amount of time the officer had to determine the type and amount

28  of force that reasonably appeared necessary, and any changing circumstances

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

during that period;

(5)     The extent of plaintiff's injury

(6)     The type and amount of force used;

(7)     The severity of the security problem at issue;

(8)     The availability of alternative methods to subdue Plaintiff;

(9)     The number of lives at risk (motorists, pedestrians, police officers) and the parties' relative culpability; i.e., which party created the dangerous situation, and which party is more innocent;

(10)    Whether it was practical for the officer to give warning of the imminent use of force, and whether such warning was given;

(11)    Whether a reasonable officer would have or should have accurately perceived a mistaken fact; and

(12)    Whether there was probable cause for a reasonable officer to believe that Plaintiff was committing a crime involving the infliction or threatened infliction of serious physical harm.

"Probable cause" exists when, under all of the circumstances known to the officers at the time, an objectively reasonable police officer would conclude there is a fair probability that Plaintiff was committing a crime.

(Ninth Circuit Manual of Model Civil Jury Instructions §§ 9.20 & 9.25); *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009); *Villanueva v. California*, 986 F.3d 1158, 1168 (9th Cir. 2021).

**<u>Plaintiff's Key Evidence:</u>**

Plaintiff's key evidence in support of this claim is similar, if not identical to, the evidence that supports Plaintiff's First Claim for relief.  As in the First Claim for Relief, Plaintiff will use scene photographs, Body Worn camera videos, photographs of his injury and the testimony of Mr. Stern and his wife, Michelle Suh to establish liability, the harm and injuries.

///

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

**Defendants' Key Evidence:**

On May 30, 2020, the LAPD was mobilized to manage the civil unrest in the City of Los Angeles.  Defendant Officer David Martin responded to the area of Third Street and West of Fairfax Avenue in the City of Los Angeles where thousands of people flooded the streets.  At approximately 1:00 p.m. protesters took over a Metro bus, surrounding the buss, standing on top of the bus and breaking the windows to the bus.  As such, the assembly was declared unlawful.

As officers tried to clear the unlawful assembly and rescue the occupants of the Metro bus, individuals lit multiple police vehicles on fire, and threw rocks, bottles of urine, and other objects at officers.  To assist in clearing out the area and to allow a line of officers to advance towards the Metro bus, Defendant Officer Martin used his less lethal 37 millimeter launcher, a device which shoots multiple small foam rounds at the ground at once, which then skip up and hit the lower portion of a person's body.  One of the small foam rounds hit the ground in front of Plaintiff and then struck him in the leg.  Plaintiff suffered no serious injuries and required no medical treatment.  Defendants will present body worn camera video, photographs, and testimony from Officer Martin, Plaintiff and police practices expert Clarence Chapman to support these facts.

*Claim No. 3: Plaintiff Nicholas Stern has claims for violations of the Bane Act (Civil Code § 52.1) against all Defendants.*

**Elements Required to Establish Plaintiff's Claim No. 3**

To establish Plaintiff's claim for violating the Bane Act (Civil Code § 52.1), Mr. STERN must prove all of the following:

(1)     That the City of Los Angeles through the conduct of its officers of Officer Martin of the City of Los Angeles used threats, intimidation, coercion or violence to interfere with Mr. STERN's Civil Rights including his rights of freedom of speech and the press, the right to be free from excessive force, the right to due process, and the right to bodily integrity and protection from bodily harm, including

PRE-TRIAL CONFERENCE ORDER
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

his rights under Civil Code § 42, Penal Code §§ 149, 240, and 242, and his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and his rights under Article 1, Sections 1, 7, and/or 13 of the California Constitution.

(2)    Defendants the City of Los Angeles through the conduct of Officer Martin's reckless disregard to Mr. STERN of his rights of freedom of speech and the press, the right to be free from excessive force, the right to due process, and the right to bodily integrity and protection from bodily harm, as protected by Civil Code § 42, Penal Code §§ 149, 240, and 242, and his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution, and his rights under Article 1, Sections 1, 7, and/or 13 of the California Constitution.

(3)    That Mr. STERN was harmed; and

(4)    That City of Los Angeles through the conduct of Officer Martin of the City of Los Angeles were a substantial factor in causing Mr. STERN harm.

**Plaintiff's Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First and Second Claim for relief.

**Defendants' Key Evidence:**

On May 30, 2020, the LAPD was mobilized to manage the civil unrest in the City of Los Angeles. Defendant Officer David Martin responded to the area of Third Street and West of Fairfax Avenue in the City of Los Angeles where thousands of people flooded the streets. At approximately 1:00 p.m. protesters took over a Metro bus, surrounding the buss, standing on top of the bus and breaking the windows to the bus. As such, the assembly was declared unlawful.

As officers tried to clear the unlawful assembly and rescue the occupants of the Metro bus, individuals lit multiple police vehicles on fire, and threw rocks, bottles of urine, and other objects at officers. To assist in clearing out the area and to allow a line of officers to advance towards the Metro bus, Defendant Officer

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

Martin used his less lethal 37 millimeter launcher, a device which shoots multiple small foam rounds at the ground at once, which then skip up and hit the lower portion of a person's body.  One of the small foam rounds hit the ground in front of Plaintiff and then struck him in the leg.  Plaintiff suffered no serious injuries and required no medical treatment.  Defendants will present body worn camera video, photographs, and testimony from Officer Martin, Plaintiff and police practices expert Clarence Chapman to support these facts.

**_Claim No. 4: Plaintiff Nicholas Stern has a claim for Assault and Battery (Gov. Code § 820 and California Common Law) against all Defendants._**

**Elements Required to Establish Plaintiff's Claim No. 4**

To establish Plaintiff's claim for Assault and Battery (Gov. Code § 820 and California Common Law), Mr. STERN must prove all of the following:

(1)     That the City of Los Angeles through the conduct of Officer Martin, intentionally touched Mr. STERN;

(2)     That the City of Los Angeles through the conduct Officer Martin, used unreasonable force against  Mr. STERN;

(3)     That Mr. STERN did not consent to the use of that force;

(4)     That Mr. STERN was harmed; and

(5)     That the City of Los Angeles', through the conduct of Officer Martin, a use of unreasonable force was a substantial factor in causing Mr. STERN's harm.

**Plaintiff's Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First and Second Claim for relief.

Defendants' Key Evidence:

On May 30, 2020, the LAPD was mobilized to manage the civil unrest in the City of Los Angeles.  Defendant Officer David Martin responded to the area of Third Street and West of Fairfax Avenue in the City of Los Angeles where thousands of people flooded the streets.  At approximately 1:00 p.m. protesters took

PRE-TRIAL CONFERENCE ORDER
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

over a Metro bus, surrounding the buss, standing on top of the bus and breaking the windows to the bus.  As such, the assembly was declared unlawful.

As officers tried to clear the unlawful assembly and rescue the occupants of the Metro bus, individuals lit multiple police vehicles on fire, and threw rocks, bottles of urine, and other objects at officers.  To assist in clearing out the area and to allow a line of officers to advance towards the Metro bus, Defendant Officer Martin used his less lethal 37 millimeter launcher, a device which shoots multiple small foam rounds at the ground at once, which then skip up and hit the lower portion of a person's body.  One of the small foam rounds hit the ground in front of Plaintiff and then struck him in the leg.  Plaintiff suffered no serious injuries and required no medical treatment.  Defendants will present body worn camera video, photographs, and testimony from Officer Martin, Plaintiff and police practices expert Clarence Chapman to support these facts.

***Claim No. 5: Plaintiff Nicholas Stern has a claim for Negligence (Gov. Code § 820 and California Common Law) against all Defendants.***

**<u>Elements Required to Establish Plaintiff's Claim No. 5</u>**

To establish Plaintiff's claim for Negligence (Gov. Code § 820 and California Common Law), Mr. STERN must prove all of the following:

(1)    That the City of Los Angeles, through the conduct of Officer Martin [and unnamed officers and superviors][1,] were negligent;

(2)    That Plaintiff Stern was harmed;

(3)    That the City of Los Angeles, through the conduct of Officer Martin [and unnamed offices and supervisors] negligence was a substantial factor in causing Mr. STERN's harm.

///

///

---

[1] Plaintiff contends that the conduct of unnamed employees of the City of Los Angeles can establish liability for negligence.  Defendants do not agree so this portion is placed in brackets subject to the ruling of the Court.

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

**Plaintiff's Key Evidence:**

Plaintiff's key evidence in support of this claim is similar, if not identical to the evidence that supports Plaintiff's First and Second Claim for relief.

Defendants' Key Evidence:

On May 30, 2020, the LAPD was mobilized to manage the civil unrest in the City of Los Angeles.  Defendant Officer David Martin responded to the area of Third Street and West of Fairfax Avenue in the City of Los Angeles where thousands of people flooded the streets.  At approximately 1:00 p.m. protesters took over a Metro bus, surrounding the buss, standing on top of the bus and breaking the windows to the bus.  As such, the assembly was declared unlawful.

As officers tried to clear the unlawful assembly and rescue the occupants of the Metro bus, individuals lit multiple police vehicles on fire, and threw rocks, bottles of urine, and other objects at officers.  To assist in clearing out the area and to allow a line of officers to advance towards the Metro bus, Defendant Officer Martin used his less lethal 37 millimeter launcher, a device which shoots multiple small foam rounds at the ground at once, which then skip up and hit the lower portion of a person's body.  One of the small foam rounds hit the ground in front of Plaintiff and then struck him in the leg.  Plaintiff suffered no serious injuries and required no medical treatment.  Defendants will present body worn camera video, photographs, and testimony from Officer Martin, Plaintiff and police practices expert Clarence Chapman to support these facts.

**Defendants' Key Evidence:**

On May 30, 2020, the LAPD was mobilized to manage the civil unrest in the City of Los Angeles.  Defendant Officer David Martin responded to the area of Third Street and West of Fairfax Avenue in the City of Los Angeles where thousands of people flooded the streets.  At approximately 1:00 p.m. protesters took over a Metro bus, surrounding the buss, standing on top of the bus and breaking the windows to the bus.  As such, the assembly was declared unlawful. As officers tried

PRE-TRIAL CONFERENCE ORDER
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

to clear the unlawful assembly and rescue the occupants of the Metro bus, individuals lit multiple police vehicles on fire, and threw rocks, bottles of urine, and other objects at officers.  To assist in clearing out the area and to allow a line of officers to advance towards the Metro bus, Defendant Officer Martin used his less lethal 37-millimeter launcher, a device which shoots multiple small foam rounds at the ground at once, which then skip up and hit the lower portion of a person's body. One of the small foam rounds hit the ground in front of Plaintiff and then struck him in the leg. Plaintiff suffered no serious injuries and required no medical treatment. Defendants will present body worn camera video, photographs, and testimony from Officer Martin, Plaintiff and police practices expert Clarence Chapman to support these facts.

### B.    Defendant's Affirmative Defenses

Defendants plan to pursue the following affirmative defenses: qualified immunity and comparative negligence.  The element required to establish the affirmative defense of qualified immunity is that Officer Martin's actions did not contravene clearly established caselaw, so that a reasonable officer would not have fairly been on notice that the actions were illegal.

The elements required to establish comparative negligence are (1) Plaintiff was negligent and (2) Plaintiff's negligence was a substantial factor in causing his harm.

## 8.    ISSUES TO BE TRIED

All of the foregoing issues remain to be tried except for the stipulated facts identified in Section 5, *supra*.

## 9.    DISCOVERY

All discovery is complete. Discovery closed on March 22, 2023.  Plaintiff has recently produced additional discovery items as recent as September 7, 2023. Defendants are evaluating Plaintiff's recent productions and reserve the right to object to any untimely disclosures.

PRE-TRIAL CONFERENCE ORDER
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

**10.    EXHIBITS**

All disclosures under F.R.Civ.P. 26(a)(3) have been made. Plaintiff has recently produced additional discovery items.  Defendants are evaluating Plaintiff's recent productions and reserve the right to object to any untimely disclosures.

The Parties have filed a joint exhibit list under separate cover as required by L.R. 16-6.1. The Parties have not yet reached a resolution as to which exhibits will be admitted without objection at trial.

**11.    WITNESS LISTS**

Pursuant to the Court's orders and Federal Rules of Civil Procedure, Defendants filed their witness list on July 25, 2023. Plaintiff filed his Witness List on September 8, 2023. Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony will mark such depositions in accordance with L.R. 16-2.7.

**12.    LAW AND MOTION MATTERS**

The following law and motion matters and motions *in limine*, and no others, are pending or contemplated:

a.    Dkt. No. 93: Case No. 2:21-CV-03760-CBM(ASx): Joint Stipulation Regarding Proposed Motions *In Limine*;

b.    Dkt. No. 91: Case No. 2:21-CV-03760-CBM(ASx): Defendants' Motion and Motion *In Limine* (#1) to Exclude Evidence or Argument Related to Non Defendant Officers Uses of Force filed by Defendants City of Los Angeles and David Martin; and

c.    Dkt. No. 92: Case No. 2:21-CV-03760-CBM(ASx): Defendants' Motion and Motion *In Limine* (#2) to Exclude Evidence of Class Action Settlements or Los Angeles Police Department Settlements with Other Media filed by Defendants City of Los Angeles and David Martin.

///

20

**PRE-TRIAL CONFERENCE ORDER**
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.

**13.   BIFURCATION**

Bifurcation of the following issues for trial is ordered:

Phase I: Liability, damages and the entitlement to punitive damages

Phase II: The amount of punitive damages

Dated: <u>SEPTEMBER 20</u>, 2023

_____
UNITED STATES DISTRICT JUDGE

Approved as to form and content.

<u>   /s/ V. James DeSimone   </u>
V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Ryann E. Hall, Esq.
Jenica P. Leonard, Esq.
Attorneys for Plaintiff

<u>     /s/ Caylin W. Jones     </u>
Nathan A. Oyster, Esq.
Caylin W. Jones, Esq.
Terri Mehra, Esq.
Attorneys for Defendants

PRE-TRIAL CONFERENCE ORDER
*Stern v. City of Los Angeles, et al.*
Case No.: 2:21-CV-03760-CBM(ASx)

V. James DeSimone, Esq.
Carmen D. Sabater, Esq.
Jenica P. Leonard, Esq.